SINGER MANUFACTURING CO. v. CITY OF ELIZABETH.

1. If a municipal corporation has the right to borrow money for a specific purpose on bonds running for twenty years, and by mistake issues bonds for the same purpose under another grant of authority, such bonds running for a less period—*held,* the bonds so issued were legal obligations.
2. An irregularity in the exercise of a granted authority will not illegalize the transaction.
3. A recital in a bond is not an estoppel to the obligor setting up that it is not his deed.

In debt. On special case.

This was an action of debt, brought by the plaintiff as payee or obligee of two sealed promissory notes or writings obligatory, against the defendant as maker thereof, to recover the amount due thereon, and whereof the following are copies respectively :

(1)

$100,000. Know all men by these presents, that the city of Elizabeth, New Jersey, acknowledges itself indebted to the Singer Manufacturing Company, of New York, in the sum of one hundred thousand dollars, which said sum the said city of Elizabeth promises to pay to the said the Singer Manufacturing Company, or order, in two months from this date, with interest at the rate of seven per cent. per annum, and, as security for the payment of the above sum, the said city of Elizabeth has deposited with the said the Singer Manufacturing Company, one hundred consolidated improvement bonds of the city of Elizabeth, of one thousand dollars each, due April 1st, 1886, numbered 1612–1711, inclusive.

In testimony whereof, this obligation is countersigned by the comptroller and signed by the mayor, and sealed with the corporate seal, this 23d day of November, 1876.

ROBERT W. TOWNLEY, *Mayor.*

[L. S.] THOMAS B. LEGGETT, *Comptroller.*

(2)

$200,000.   Know all men by these presents, that the city of Elizabeth, New Jersey, acknowledges itself indebted to the Singer Manufacturing Company, of New York, in the sum of two hundred thousand dollars, which said sum the said city of Elizabeth promises to pay to the said the Singer Manufacturing Company, or order, on demand, with interest at the rate of seven per cent. per annum.

The above-mentioned sum being part of a loan authorized by the city charter, in anticipation of taxes, and approved by the city council by a resolution on the 8th day of January, 1877.

In witness whereof, this obligation is countersigned by the comptroller and signed by the mayor, and sealed with the corporate seal, this 28th day of February, 1877.

One hundred bonds of $1000 each, numbered 1759–1658, due 1886 ; one hundred and fifty bonds of $1000 each, numbered 2569–2718, due 1896, have been deposited as collateral security for above amounts.

ROBERT W. TOWNLEY, *Mayor*.
[L. S.]   THOMAS B. LEGGETT, *Comptroller*.

The declaration contained special counts on the notes respectively, together with the common money counts.

The defendant pleaded *non est factum* to each of the special counts, and *nil debet* to the common counts, whereon issue was joined.

The issues came on to be tried at the Essex Circuit, in the term of September, 1879, before his Honor David A. Depue, a justice of this court.

The plaintiff's counsel thereupon produced the notes in question, which were received in evidence, their execution having first been admitted.

It was admitted on behalf of the defendant, that the plaintiff was the holder of the notes in question, in good faith and for value.

The defendant's counsel thereupon moved for a non-suit, on the ground that the plaintiff, besides proving the execution of the notes, had not proved the resolutions of the commissioners of the sinking fund and the city council, authorizing the borrowing of the moneys for which the notes were given, and that upon the evidence offered the plaintiff had not shown sufficient ground for recovery, which motion was denied by the court, to which decision the defendant's counsel excepted.

The defendant's counsel then proved that the moneys were borrowed and used for the payment of the principal and interest on maturing bonds, denominated "improvement bonds," and not in anticipation of taxes, and that the recital to that effect was incorrect; and that the plaintiff was informed by the comptroller when the moneys were applied for by him on behalf of the defendant, that they were wanted "to pay improvement bonds and to maintain the credit of the city."

The plaintiff's counsel objected to evidence in contradiction of the recital in the note for $200,000, that it was "part of a loan authorized by the city charter, in anticipation of taxes, and approved by the city council by a resolution on the 8th day of January, 1877;" but the objection was overruled, the evidence admitted, and an exception taken thereto by the plaintiff's counsel.

On the part of the plaintiff, the book of minutes and proceedings of the city council, containing the resolution of January 8th, 1877, referred to in the note for $200,000, and the tax ordinance of February 20th, 1877, were offered and received in evidence.

The defendant's counsel insisted that the act of the defendant in borrowing the money and executing the notes was *ultra vires*, and that therefore the plaintiff was not entitled to recover either under the special or common counts, and thereupon requested the court to direct the jury to render a verdict for the defendant, which the court declined to do, to which ruling of the court the defendant excepted, and thereupon, by direction of the court, a verdict was taken for the plaintiff for

$322,956.18, the amount due upon the notes, subject to the opinion of the court on a case to be made, with liberty to either party to turn the same into a bill of exceptions or a special verdict.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiff, *John W. Taylor.*

For the defendant, *Magie & Williamson.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The position, defensive against this action, taken in the brief of the counsel of the defendant, is, that the act of the city of Elizabeth in obtaining the loan for which the sealed bills sued on were given, was *ultra vires* to the knowledge of the plaintiff at the time he parted with his money.   At the trial, in substantiation of this ground of defence, it was proved that the moneys were borrowed and used for the payment of the principal and interest on maturing bonds, denominated "improvement bonds," and not in anticipation of taxes, and that the plaintiff was informed by the comptroller when the moneys were applied for by him on behalf of the defendant, that they were wanted "to pay improvement bonds, and to maintain the credit of the city."   The contention was and is, that the city was not authorized by law to acquire money by loan for such purpose.

Upon the side of the plaintiff it is urged as a preliminary objection that this point should not be considered, inasmuch as it is conceived that the facts on which it rests were not admissible in evidence, as such facts are contradictory of the matters recited in the instruments sued on.   This exception would seem to apply only to the sealed bill for $200,000, which contains the following statement: "The above-mentioned sum being part of a loan authorized by the city charter in anticipation of taxes, and approved by the city council by

a resolution on the 8th day of January, 1877." The proof
was to the effect that the loan was obtained not in anticipation
of taxes, but to be used in payment of certain bonds called
improvement bonds. Conceding for the moment what the
defence assumes, that money raised in anticipation of taxes
would not, under any circumstances, be a fund for the pay-
ment of improvement bonds, the fact recited and the fact
proved certainly stand in opposition, and thus the contention
of the counsel of the plaintiff is opportune, the only question
being whether it is well founded in law. But that such con-
tention has no legal basis it seems to me is most plain. The
attitude is this: the defendant seeks to prove a fact with a
view to show that this deed never had any legal existence, be-
cause it was issued without authority to the knowledge of the
obligee; the answer is, you cannot contradict the recitals of
your own deed; and this answer obviously begs the very
question in dispute; that is, whether it is the deed of the per-
son endeavoring to contradict its recitals. The legal rule that
makes the statements of a sealed instrument incontestable by
the party to it, grows out of the circumstance that such state-
ments are the deliberate utterances of such party, and conse-
quently such rule has no place until it is settled whether the
given instrument be his deed. The recitals, as against adverse
proofs, cannot help to establish the legal existence of the
specialty. If a married woman should execute a conveyance
declaring in it in never so solemn a form that she was a *feme
sole,* no one would pretend that the fact of her coverture could
not be shown. But it is not necessary further to observe upon
this point, for the question is settled by this court in the case
of *Hudson* v. *Inhabitants of Winslow,* 6 *Vroom* 437. In that
case it was directly ruled with respect to the doctrine of estop-
pel by reason of recitals in sealed instruments, that " the princi-
ple is applicable only where the existence of the deed as the
act of the party is admitted." The following authorities are
in accord with this ruling: *Chisholm* v. *Montgomery,* 2 *Woods
C. C.* 594; *Starin* v. *Genoa,* 23 *N. Y.* 439; *Fairtitle* v. *Gilbert,*
2 *T. R.* 169; *Bigelow on Estoppel* 283; *New York and Oswego*

*R. R. Co.* v. *Van Horn*, 57 *N. Y.* 474; *Shapley* v. *Abbott*, 42 *N. Y.* 443.

Assuming, then, the admissibility of this matter set up by way of defence, the next inquiry is as to its legal value.

The defence on this head is rested on two facts : first, that the city of Elizabeth transcended its authority in borrowing moneys to pay its improvement bonds, and that the plaintiff, when parting with his money, was informed that it was to be used for such unauthorized purpose. As this corporate body had the undoubted right to borrow money in anticipation of its taxes, it is not contended that if the money had been ostensibly applied for and loaned for such object, that the plaintiff's claim could have been defeated by proof that the agents of the city secretly intended to apply it, and did apply it, to a different and illegitimate use. A person lending money to a municipal corporation for an object for which it is empowered by its charter to borrow such money, cannot be affected by its misappropriation, or by the covert intentions of the officers of such city when they procure the loan. This principle is not controverted in the argument of the counsel of the defendant, but it is insisted that in this case the money was borrowed without authority to pay these before-mentioned bonds, and that such purpose was known to the plaintiff. But the difficulty is, the facts of the case do not form an adequate groundwork for the argument erected upon them. There is nothing in the proofs that shows that the plaintiff was aware that the loan made by him was not, as the sealed bill stated it to be, "a loan authorized by the charter in anticipation of taxes." It is an inadmissible inference that because the plaintiff was informed by the comptroller when the moneys were applied for that they were wanted " to pay improvement bonds, and to maintain the credit of the city," that thereby he was given to understand that the loan was not in anticipation of taxes. Upon referring to the provisions of the charter, it is clear that a loan might have been legally obtained which would have been wanted to pay some of these improvement bonds, and which at the same time would also have been in anticipation

of the taxes. This results from the fact that the city had the right to raise by tax such money as was deemed requisite to meet these maturing bonds, and had also the right to make temporary loans not exceeding its anticipated taxes. For example, if, in the year 1877, the year in which this sealed bill was given, the city had determined, as it had the legal right to do, to raise by tax the sum of two hundred thousand dollars in order to put that amount in the sinking fund to pay off improvement bonds, it would have been perfectly legitimate for it to have borrowed, in anticipation of its taxes, that amount. The consequence is, when the plaintiff was told by his sealed bill that the money he was asked to loan was in anticipation of taxes, and was further told by the comptroller that such money was wanted " to pay improvement bonds and maintain the credit of the city," he was not apprised that anything unlawful was in contemplation. The corporation had the right, in the strictest sense, to borrow the money for the purpose and in the manner specified. The plaintiff had a right to suppose that the city was raising money by tax, as it was capacitated to do, to pay off maturing bonds; he could not know, for he had not the means of knowing, whether the city would take, or had taken, the steps necessary to effect such purpose. All the information he possessed was that the corporation was authorized by its charter to raise money by tax to pay these improvement bonds, and to borrow money in anticipation of such taxes, and with this knowledge he made the loan in question. I do not think he was bound to inquire further. The right of the plaintiff to rely on the acts of the city officials is discussed in the case of Mutual Benefit Life Insurance Co. *v.* City of Elizabeth.

In verification of the foregoing construction of the laws relating to the city of Elizabeth, I refer, in the first place, to the sixty-fourth section of the act of 1863. *Pamph. L., p.* 133. This is the provision defining the taxing power of the city, and in its sixth clause declares that the corporation shall have power to raise by tax in each year such sum of money as it may deem expedient " for the payment of the interest of the city debt and

upon temporary loans, and such part of the principal thereof
as may be due and payable." And by the third, seventh and
eighth sections of the supplement of the year 1863 a sinking
fund is established, and the city council authorized to raise by
tax in each year, such percentage of the general debt of the
city and the interest accruing thereon as they may deem expe-
dient, and to pay the tax so collected into the said sinking
fund, and directing the commissioners of such fund " to make
provision for the payment of the bonds and interest of the
said city as they may become due." Thus was bestowed upon
the municipal authorities full power to assess a tax in any
year, for the purpose of providing a fund to pay off these im-
provement bonds as they matured. It is the thirty-fifth sec-
tion of the amended charter enacted in the year 1863, (*Pamph.
L., p.* 124,) that confers the authority to make temporary loans
in anticipation of city taxes.

But passing by this view and looking at the matter in
another aspect, the plaintiff's cause of action appears to me to
be sustainable. The act of obtaining the loan is legally de-
fensible, so far at least as the right to recover the money lent
is concerned, by force of the supplement to the charter of the
defendant passed March 17th, 1870, (*Pamph. L., p.* 754,) which
enacts that the city council shall have power to issue funded
debt bonds for the amount of the floating debt which may have
been expended in the improvement of the public grounds, or
be due for the purchase of real estate and fire apparatus, &c.,
"and also in renewal of bonds of the city which may from
time to time fall due." There is a further direction that such
bonds shall be payable in not less than twenty years, with
interest at the rate of seven per centum per annum.

It is plain that this act was a full authority to the city to
borrow the money which has been loaned to it by the plain-
tiff for the purpose for which it was loaned. The defence
itself shows that the money in question was obtained for the
payment of certain improvement bonds of the city then falling
due, and that it was made use of to that end. If, therefore,
the bond in suit, instead of reciting that it was for part of a

loan authorized by the city charter in anticipation of taxes, had stated that it was a funded debt bond under this act, and if such bond had been framed to run for twenty years, no question could have been made with respect to the legality of the transaction. It is this misrecital, and the narrow credit given by the bond in suit, which are the circumstances relied on in the brief of the counsel of the defendant to forbid the present transaction from being validated by force of the statute just cited.

But this appeal to mere forms will not avail. It is obvious that in this affair nothing wrong was in contemplation by either of these parties. The city being in want of money to pay its debts, the plaintiff in good faith loaned to it the requisite sum, and such money in common honesty must be repaid, unless a defence to such claim can be presented constructed out of solid materials. If the contract in which the loan is inherent was in opposition to express legislation, to public policy, or to any general principle of law, then such contract must fail; but its want of coincidence with mere naked formalities or statutory directions not intended to be of the essence of the thing authorized, will not have such effect. When the purpose is to measure in such a case as this the scope of the granted statutory authority, the prime question is with respect to the substance of such grant, the forms or modes in which it is to be exercised being, on plain grounds, in the main, matters of mere detail, and unessential to the legality of the exercise of the authority, unless made material by a legislative manifestation of intent. In the present instance the pith and essence of the legislative grant was to authorize the city to issue new bonds to take up antecedent bonds as they matured. The requirement that the new bonds should not mature for a definite time, was a designation of a non-essential, providing for a convenience and nothing more. The circumstance that the bonds were required to be payable in twenty years rather than in five, or within any other designated period, could not be a matter of substance or anything above an immaterial incident to the act authorized; so that it would seem

quite unreasonable to suppose that it was intended to make such a quality of the transaction one of the essentials of its legality. The material facts are that this city had the legal right to borrow this money for the purpose for which it has been borrowed and to which it has been applied. The irregularities attending the execution of such power cannot so far illegalize it as to frustrate the common justice of the affair so as to defeat a recovery. If the city officials were mistaken with respect to the mode in which the power was to be exercised, the mistake is of no consequence if they had the right to effect the same end in another mode. Such I deem the correct legal principle, and such is the view upon this subject enforced by the judgments which the courts have heretofore rendered. In the case of *Township of Rock Creek* v. *Strong*, 6 *Otto* 271, it was decided that provisions respecting the rate of interest to be paid by town bonds, and the length of time which they are to run, are directory and not of the essence of the power. For illustrations of the application of the same rule see also the following cases: *Gilchrist* v. *Little Rock*, 1 *Dill.* 261; *Mott* v. *United States Trust Co.*, 19 *Barb.* 569; *Northwestern Mut. Ins. Co.* v. *Overholt*, 4 *Dill.* 287.

There is a long train of cases to this effect. They are founded on the distinction between an act done by one of these public corporations which is in a strict sense outside of the scope of the power conferred upon it, such act being void, and acts done within the scope of such power in an irregular manner, when the mode of acting is plainly a direction and not a mandate. For instance, in the case of *De Voss* v. *Richmond*, 18 *Gratt.* (*Va.*) 338, the city council were authorized to borrow money and issue bonds, and it was ordered to *insert the consideration on the face of certain bonds.* This was not done, but the instruments nevertheless were held valid, the court saying that such direction was not a limitation on the power granted. So, in the present case, I regard the legislative expression of the length of time these renewal bonds were to run as being merely directory, the consequence being that the act in question was not, in a legal sense, *ultra vires.*

The plaintiff is entitled to judgment.